**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DEX IMAGING, LLC, | CASE NO. 5:25-cv-00523 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| KENNETH VANDEN HAUTE, *et al.*, | **MEMORANDUM OPINION & ORDER** |
| Defendants. | |

In its Amended Complaint, Plaintiff DEX Imaging, LLC ("DEX") seeks injunctive relief

and damages from Defendants Kenneth Vanden Haute ("Mr. Vanden Haute"), a former DEX

senior executive, and Impact Networking Ohio, LLC's ("Impact"), a competitor.  (ECF Doc. 14

("Am. Compl."), p. 1.)  DEX asserts that Impact is liable for tortious interference with contract

and both Defendants are liable for misappropriation of trade secrets arising from their improper

and unlawful actions in competing against DEX and stealing DEX's confidential information and

trade secrets, knowing their conduct violated the law and breached agreements between DEX

and Mr. Vanden Haute.  (Am. Compl., pp. 1-2, ¶ 1.)

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for

lack of subject matter jurisdiction under Federal Rule Civil Procedure 12(b)(1).[1]  (ECF Doc. 16

---

[1] Mr. Vanden Haute also filed a motion to dismiss or transfer venue, arguing: there is a valid and enforceable forum selection clause; the Amended Complaint fails to state a plausible claim for relief; and the Court should transfer venue under 28 U.S.C. § 1404(a).  (ECF Doc. 17.)  Impact also filed a motion to dismiss, arguing the Amended

1

("Motion").)   The Motion is fully briefed and ripe for decision.[2]  (ECF Docs. 25 & 29.)  For the reasons below, the Court **DENIES** the Motion.

## I.        Claims and Allegations in the Amended Complaint

**A.        Plaintiff's Factual Allegations[3]**

Plaintiff DEX is "a nationally recognized office imaging provider" that offers "equipment sales, leasing, managed print services, maintenance, and managed IT services" and "seeks to provide expert, expedient service to its customers across the United States."  (Am. Compl., pp. 6-7, ¶¶ 34-35.)  In support of its market position, DEX "developed, acquired, and maintained valuable proprietary and confidential processes, techniques, and systems for use by its employees," including: "customer lists, pricing margins, marketing strategies, manufacturer's sales prices, employer policies with respect to mark-ups and discounts, DEX's past and planned bids for supplying office products, data compilations concerning operations, business affairs, customers," and other proprietary and intellectual property, which is described as "Confidential and Proprietary Information."  (*Id*. at p. 7, ¶¶ 37, 38.)  "DEX invested significant time and money to develop and maintain the Confidential and Proprietary Information." (*Id*. at ¶ 39.)

In 2022, DEX acquired Meritech, "an Ohio-based company that offered various services including managed IT services and office imaging services," and thus "expanded its ever-growing reach into Ohio, allowing DEX to continue providing its nationally recognized services to customers in the Buckeye state."  (*Id*. at p. 7, ¶ 40.)  Upon investing "significant capital and

---

Complaint does not state a plausible claim for relief against Impact.  (ECF Doc. 18.)  Plaintiff has since filed a Motion to Drop Impact as a party without prejudice under Fed. R. Civ. P. 21.  (ECF Doc. 34.)  Defendants' pending motions are fully briefed, but Plaintiff's pending motion is not.  For the reasons explained in a contemporaneously filed Order, Defendants' pending motions have been taken under advisement.

[2] The parties consent to the magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF Doc. 20.)

[3] The facts as alleged in the Amended Complaint are accepted as true for purposes of this Motion.

2

resources in the purchase of Meritech," Dex "received full ownership of [Meritech's] customer base, goodwill and accompanying Confidential and Proprietary Information."  (*Id*. at ¶ 41.)

The Confidential and Proprietary Information described in the Amended Complaint is alleged to be "the exclusive property of DEX and . . . a critical asset of the company," as well as "secret, confidential, and not generally known throughout the industry."  (*Id*. at p. 8, ¶ 44.)  "Due to the critical nature of this information, DEX has made significant efforts to ensure that all of the Confidential and Proprietary Information remains confidential."  (*Id*. at ¶ 45.)

After acquiring Meritech, DEX hired Mr. Vanden Haute as Executive Vice President of its "newly formed Ohio branch."  (*Id*. at p. 9, ¶ 49.)  Mr. Vanden Haute was related to a Meritech owner, "held a minority ownership interest" in the company, and worked for Meritech for years "in sales and management positions"; he "had access to detailed information about Meritech's Confidential and Proprietary Information" when he worked for Meritech.  (*Id*. at p. 9, ¶ 48.)

Mr. Vanden Haute started at DEX on or about September 1, 2022, with responsibilities including "business development, sales, and the performance of DEX's managed IT services." (*Id*. at ¶ 50.)  As an Executive Vice President, Mr. Vanden Haute "was one of the few individuals for whom access to [DEX's Confidential and Proprietary Information] was necessary." (*Id*. at p. 8, ¶ 43.)  He "had access to detailed information regarding DEX's Confidential and Proprietary information, along with the information that was previously owned by Meritech that had now become property of DEX."  (*Id*. at p. 9, ¶ 53.)  Indeed, as a "high-ranking executive" at DEX, Mr. Vanden Haute "had unfettered access to DEX's customer information, marketing strategies for the Ohio market, lists of prospective customers, pricing information, DEX's plans for business expansion, and information relating to the present and future needs of customers."  (*Id*. at p. 10, ¶ 54.)  He also "had regular contact with DEX's clients, customers, both during his

employment with Meritech and continuing after DEX purchased Meritech and [Mr.] Vanden Haute's employment commenced with DEX." (*Id*. at ¶ 55.)

Mr. Vanden Haute signed a Confidentiality and Non-Compete Agreement ("Agreement") as a condition of his employment with DEX. (*Id*. at p. 9, ¶ 51, p. 10, ¶ 56; ECF Doc. 14-1.) He "served as the primary face of DEX's Ohio branch" and "DEX would not have placed Vanden Haute in this position unless he signed the Agreement." (*Id*. at ¶ 55.) In the Agreement, Mr. Vanden Haute "agreed to not disclose to anyone, directly or indirectly, during the time Vanden Haute was employed by DEX and for a period of five years following the termination of such employment, 'any Confidential information or use such information other than on behalf of [DEX] (in the course of [Vanden Haute's] employment with [DEX])." (Am. Compl. p. 12, ¶ 64 (quoting ECF Doc. 14-1) (brackets in Am. Compl.).)

On January 6, 2025, Mr. Vanden Haute informed DEX that he was voluntarily resigning effective January 20, 2025. (*Id*. at p. 13, ¶ 68.) It was later agreed that his resignation would be effective at the end of January. (*Id*.) "However, on January 24, 2025, Impact issued a press release announcing the opening of its new office in Ohio, that the office 'was founded by Ken Vanden Haute', and he would serve as 'President.'" (*Id*. at ¶ 69.) Mr. Vanden Haute "was still employed by and had access to the records and offices of DEX at that time," but "DEX required [him] to depart prior to his resignation date" upon learning of the press release. (*Id*.)

Thereafter, DEX asserts that Mr. Vanden Haute "work[ed] at Impact in direct violation of the non-compete provision of the Agreement," and further alleges "upon information and belief":

> Vanden Haute has also retained DEX's Confidential and Proprietary Information. Further, DEX believes that Vanden Haute will use, has already used, or will inevitably use the information to illegally compete with DEX on behalf of Impact. For example, upon information and belief, Vanden Haute has already used DEX's Confidential and Proprietary Information to contact and/or solicit a DEX vendor, Kyocera Document Solutions America, Inc. ("Kyocera"). Using DEX's

4

information related to Kyocera, including but not limited to requirements and pricing, provides Vanden Haute and Impact an unfair advantage to sale products and services competitive with DEX.

(*Id*. at ¶ 71.)  "[G]iven Vanden Haute's employment with Impact as its President and violation of his Agreement not to compete," DEX alleges Mr. Vanden Haute "will inevitably and improperly use more of DEX's Confidential and Proprietary Information imminently and on into the future." (*Id*. at p. 14, ¶ 72.)  DEX sent a letter to Mr. Vanden Haute, with a copy to Impact, "reminding [Mr. Vanden Haute] of the restrictive covenants and his contractual obligations under the Agreement" (*id*. at ¶¶ 73, 75).  After that, Impact continued to employ Mr. Vanden Haute and "facilitated and encouraged unlawful conduct and violations of his restrictive covenants."  (*Id*. at 76.)  Thus, DEX alleges that "Impact through its employment of Vanden Haute is also able and will inevitably access and use DEX's Confidential and Proprietary Information."  (*Id*.)

**B.     Claims For Relief and Subject Matter Jurisdiction**

DEX asserts three claims for relief in the Amended Complaint, under state and federal law.  Count I asserts a state law claim against Defendant Impact for tortious interference with DEX's Agreement with Mr. Vanden Haute.  (Am. Compl, p. 15, ¶¶ 78-84.)  Count II asserts federal claims against both Defendants under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b).  (*Id*. at pp. 15-17, ¶¶ 85-95.)  Count III asserts claims against both Defendants for trade secret misappropriation under O.R.C. § 1333.61 et seq.  (*Id*. at pp. 17-19, ¶¶ 96-108.)

As to jurisdiction, DEX alleges "[t]his Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the law of the United States, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)," as asserted in Count II.  (Am. Compl., p. 6, ¶ 32.)  Plaintiff further alleges that this Court "has supplemental jurisdiction under 28 U.S.C. §

5

1367 over all other claims because they are so related to the DTSA claim over which the Court has original jurisdiction, that they form part of the same claim or controversy." (*Id.*)

## II.  Discussion

Defendants argue that this Court lacks subject matter jurisdiction over the case because Plaintiff has not sufficiently pled a federal claim under the DTSA.  (ECF Docs. 16, 29.)  Without subject matter jurisdiction under the federal question doctrine, they argue there is also no supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claims.  (*Id.*)

### A.    Standard of Review

"Fed.R.Civ.P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  "Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'come in two varieties: a facial attack or a factual attack.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).  "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)).  Accordingly, a district court reviewing a facial attack "takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.*  Unlike a Rule 12(b)(6) motion, however, "where subject matter jurisdiction is challenged under Rule 12(b)(1), . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (italics removed); *see Cartwright*, 751 F.3d at 759.

Because the present Motion seeks dismissal under Rule 12(b)(1) based on the allegations of the Amended Complaint alone (*see* ECF Doc. 16), Defendants present a "facial attack" to

subject matter jurisdiction, and the allegations of the Amended Complaint will be taken as true while the burden to demonstrate subject matter jurisdiction remains on the Plaintiff.[4]

**B.      The Defend Trade Secrets Act**

The DTSA creates a private cause of action for a party whose trade secret has been misappropriated "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1836(b)(1).  Thus, to properly plead a DTSA claim, a plaintiff must establish: (1) the existence of a protectable trade secret; (2) the misappropriation of the trade secret by the defendant; and (3) that the trade secret "is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1); *see Endless River Techs. LLC v. Trans Union LLC*, No. 1:18-CV-00936, 2022 WL 314598, at *9 (N.D. Ohio Feb. 2, 2022) (citing *Noco Co. v. CTEK, Inc.*, No. 1:19 CV 00853 DCN, 2020 WL 821485, at *6 (N.D. Ohio Feb. 18, 2020) (citing 18 U.S.C. § 1836(b)(1))).

The third factor, the "interstate commerce" requirement, has been found "necessary for a district court to have jurisdiction" and "courts have dismissed DTSA claims for lack of subject-matter jurisdiction upon finding the interstate-commerce element lacking."  *See Health Care Facilities, Partners, LLC v. Diamond*, No. 5:21-CV-1070, 2022 WL 16923888, at *4 (N.D. Ohio Nov. 14, 2022) (citing cases).  Courts also have identified two requirements within this factor: a "nexus" requirement and a "relationship" requirement.  *See Health Care Facilities, Partners, LLC*, 2022 WL 16923888, at *6; *see also R.J. Heating Co. v. Rust*, No. 1:22-CV-00710, 2024 WL 1307114, at *4-5 (N.D. Ohio Mar. 27, 2024).  The nexus requirement provides that the relevant product or service must be "used in, or intended for use in, interstate or foreign

---

[4] Plaintiff submitted an affidavit in connection with its response to Defendants' Motion.  (ECF Doc. 25, pp. 1-2; ECF Doc. 25-1.)  While consideration of evidence may be appropriate when a court is presented with a factual attack, *Ohio Nat. Life Ins. Co.*, 922 F.2d at 325, Defendants raise only a facial attack on the pleadings.  Accordingly, the Court will not weigh or consider the affidavit submitted by Plaintiff in deciding this Motion.

commerce," and the relationship requirement provides that the relevant trade secret must be "related to" that product or service. 18 U.S.C. § 1836(b)(1); *see Health Care Facilities, Partners, LLC*, 2022 WL 16923888, at *7-8; *R.J. Heating Co.*, 2024 WL 1307114, at *4-5.

In their Motion, Defendants assert that Plaintiff has not properly pled a DTSA claim because DEX does not sufficiently allege that the relevant trade secrets are related to a product or service used in, or intended for use in, interstate commerce. (*See* ECF Doc. 16.) The Court will turn to an assessment of whether Plaintiff has adequately pled both the "nexus" and "relationship" elements of the interstate commerce requirement.[5]

## C.      Plaintiff's Allegations Are Sufficient to Meet the Nexus Requirement

Under the nexus requirement, the relevant "product or service" must be "used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see Health Care Facilities, Partners, LLC*, 2022 WL 16923888, at *7; *R.J. Heating Co.*, 2024 WL 1307114, at *4. Here, DEX alleges that it offers office equipment sales/leasing, managed print services, maintenance, and managed IT services "throughout the United States" (Am. Compl., p. 2, ¶ 4) and provides "expert, expedient service to its customers across the United States" (*id.* at p. 7, ¶ 35). And when it acquired Ohio-based Meritech, DEX alleges that the acquisition expanded its reach into Ohio and allowed it "to continue providing its nationally recognized services to

---

[5] Defendants' Motion does not assert or develop a challenge to any other elements of the DTSA claim, i.e., the existence or misappropriation of a trade secret (*see* ECF Doc. 16), although their reply brief does include a cursory statement that the Amended Complaint contains "vague" claims of misappropriation (ECF Doc. 29, p. 4). To the extent Defendants intended to argue that the misappropriation element was not sufficiently pled, the Court will not consider the argument in connection with this Motion because "[i]t is well established that courts will not normally consider issues raised for the first time in Reply Briefs, as it deprives the non-movant of a full and fair opportunity to respond." *Jemison v. AFIMAC Glob.*, 645 F. Supp. 3d 781, 801 (N.D. Ohio 2022) (citing inter alia *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Further, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) (internal citations omitted). Any challenge to the other elements of the DTSA claim was waived. Further, the Court is satisfied based upon its own review of the Amended Complaint that the other elements of the DTSA claim are sufficiently pled for purposes of establishing subject matter jurisdiction.

customers in" Ohio.  (*Id*. at ¶ 40.)  Thus, DEX's allegations concerning the relevant products and services suggest they were both used in, and intended to be used in, interstate commerce.

In arguing that the Amended Complaint fails to satisfy the DTSA interstate commerce requirement, Defendants focus on the interstate reach of the alleged "trade secrets" rather than the interstate reach of the related "products and services."  (*See, e.g.,* ECF Doc. 16, p. 3 ("There are no allegations in the Amended Complaint that support any inference that the trade secrets are being used in interstate commerce."); *id.* ("[T]here are no allegations in the Amended Complaint that demonstrate that DEX's trade secrets are used in interstate commerce, nor do the allegations support an inference that the trade secrets are being used in interstate commerce."); *id.* ("To the contrary, the pleading demonstrates that DEX's purported trade secrets are limited to its business in Ohio.").  But the governing statute clearly states that it is the relevant "product or service" that must be "used in, or intended for use in, interstate or foreign commerce," while the relevant trade secrets must more generally be "related to" that product or service.  18 U.S.C. § 1836(b)(1).

For the reasons set forth above, the Court finds the allegations in the Amended Complaint describing the nationwide scope of DEX's products and services are sufficient to demonstrate, at a pleading level, a "nexus" between DEX's products and services and interstate commerce.

D.      **Plaintiff's Allegations Are Sufficient to Meet the Relationship Requirement**

Under the "relationship" requirement, the relevant trade secrets must be "related to" the products or services that are used or intended to be used in interstate commerce.  18 U.S.C. § 1836(b)(1); *see Health Care Facilities, Partners, LLC*, 2022 WL 16923888, at *8; *R.J. Heating Co.*, 2024 WL 1307114, at *5.  Courts construe the term "related to" broadly, finding it "means 'to stand in some relation; to have bearing or concern; refer; to bring into association with or connection with.'"  *Health Care Facilities, Partners, LLC*, 2022 WL 16923888, at *8 (citing *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992)).

Defendants assert that this requirement is not met in the Amended Complaint because DEX "fails to make allegations tying the alleged misappropriated trade secrets to" its alleged "national services."  (ECF Doc. 29, p. 2.)  They argue further that the allegations in the Amended Complaint "reveal that the allegedly misappropriated trade secrets do not involve interstate commerce" and instead "are centered around Impact's alleged competition to DEX in Ohio after hiring Vanden Haute." (*Id*. at pp. 2-3 (emphasis removed).)  However, an independent review of the Amended Complaint does not support Defendants' assertions.

First, the Amended Complaint clearly states that DEX's "Confidential and Proprietary Information" includes both information DEX developed and acquired on a national level and information it acquired through the purchase of Meritech, an Ohio-based company.  Specifically, DEX alleges it: (1) "developed, acquired, and maintained valuable proprietary and confidential processes, techniques, and systems for use by its employees" (*id.* at ¶ 37), including customer lists, pricing margins, marketing strategies, policies, data compilations, etc. (*id.* at ¶ 38 (referred to collectively as "Confidential and Proprietary Information")); and (2) acquired Meritech's "customer base, goodwill, and confidential and proprietary information" (*id*. at ¶¶ 40-41).

Second, the Amended Complaint explicitly states that Mr. Vanden Haute had "access to detailed information regarding DEX's Confidential and Proprietary information, *along with* the information that was previously owned by Meritech that had now become property of DEX." (*Id*. at p. 9, ¶ 53 (emphasis added).)  Thus, DEX alleges that Mr. Vanden Haute had access to both the confidential information it acquired and developed as part of its national operations and the Ohio-specific information it developed and acquired through its Ohio operations.  Indeed, Mr. Vanden Haute was allegedly "one of the few individuals for whom access [to DEX's Confidential and Propriety Information] was necessary." (*Id*. at 8, ¶ 43).  And when DEX alleges

10

that Mr. Vanden Haute "had unfettered access to DEX's customer information, marketing strategies for the Ohio market, lists of prospective customers, pricing information, DEX's plans for business expansion, and information relating to the present and future needs of customers," the only category of information explicitly limited to Ohio is "marketing strategies." (*Id*. at p. 10, ¶ 54.) While DEX alleges that Mr. Vanden Haute was "the primary face of DEX's Ohio branch" (*id.* at ¶ 55), it also alleges that its operations in Ohio were an extension of DEX's "nationally recognized services" to customers in Ohio (*id*. at p. 7, ¶ 40).

Finally, DEX alleges that Mr. Vanden Haute used DEX's "Confidential and Proprietary Information to contact and/or solicit a DEX vendor, Kyocera Document Solutions America, Inc." using confidential information regarding Kyocera's "requirements and pricing." (*Id.* at p. 13, ¶ 71.) Defendants do not rebut Plaintiff's contention that this allegation "further implicates the nationwide, interstate aspect of DEX's products and services." (ECF Doc. 25, p. 7.) DEX also alleges that Mr. Vanden Haute has used, threatened to use, or will use "DEX's customer lists, pricing and requirements information and other Confidential and Proprietary Information to call upon and solicit customers in the same area as he did on behalf of DEX," without any clear suggestion that the information in question was exclusively acquired or developed in Ohio, or exclusively related to DEX's Ohio operations. (Am. Compl., p. 16, ¶ 91.) Thus, while Defendants contend that the Amended Complaint "demonstrates that DEX's purported trade secrets are limited to its business in Ohio" (ECF Doc. 16, p. 3), there is nothing in the Amended Complaint's language to suggest that the Confidential and Proprietary Information in question related only to products or services offered exclusively in Ohio.

Thus, as outlined above, the Amended Complaint alleges that DEX: supplies products and services throughout the United States (including Ohio); has acquired and maintained trade

11

secrets both on the national level and from Ohio-based Meritech; and gave Mr. Vanden Haute access to both its national- and Ohio-based trade secrets.  It further alleges that Mr. Vanden Haute used those trade secrets to contact or solicit a specific vendor and has used, threatened to use, or will use those trade secrets to call upon or solicit other customers.  Regardless of whether Mr. Vanden Haute generally operated in the Ohio region, the allegations in the Amended Complaint are sufficient to support a finding that the trade secrets allegedly misappropriated by Defendants were "related to" DEX's interstate products and services.

In their reply brief, Defendants attempt to distinguish other cases where courts similarly found allegations sufficient to satisfy the interstate commerce requirement, asserting that the plaintiffs in those cases "alleged overt misappropriation, compared to DEX's vague allegations of inevitable disclosure."  (ECF Doc. 29, p. 4.)  This argument does not change the Court's analysis.  As explained in footnote 5, Defendants did not timely assert or adequately develop any challenge to the adequacy of the pleadings with respect to the "misappropriation" element of the DTSA claim, and therefore waived any such argument.  The nature of the alleged misappropriation is not an element of the "relationship" requirement.  Further, as discussed above, the Amended Complaint does not merely allege that Defendants will "inevitably" disclose trade secrets, but also that Mr. Vanden Haute "will use, has already used, or will inevitably use" DEX's trade secrets "to illegally compete with DEX on behalf of Impact," and indeed "has already used" DEX's trade secrets—including "requirements and pricing"—to "contact and/or solicit a DEX vendor" with a resulting "unfair advantage to sale products and services competitive with DEX."  (Am. Compl., p. 13, ¶ 71.)[6]

---

[6] It is notable that Defendants' argument on this point neither acknowledges nor addresses the specific allegations set forth in paragraph 71 of the Amended Complaint.  (*See* ECF Doc. 29, pp. 4-5.)

12

For the reasons set forth above, the Court finds the allegations in the Amended Complaint describing Mr. Vanden Haute's access to DEX's national- and Ohio-based trade secrets and asserting that he used those trade secrets to contact or solicit a DEX vendor, and had used or would continue to use those trade secrets to illegally compete with DEX, are sufficient to demonstrate, at a pleading level, a "relationship" between DEX's trade secrets and the products and services it offered in interstate commerce.  The Court accordingly finds that the allegations in the Amended Complaint are sufficient to fulfill the "interstate commerce" element of DEX's DTSA claim, and that DEX therefore has adequately stated a claim under the DTSA for purposes of establishing this Court's subject matter jurisdiction.

### III.    Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss for lack of subject matter jurisdiction (ECF Doc. 16) is **DENIED**.

March 31, 2026

/s/Amanda M. Knapp
AMANDA M. KNAPP
United States Magistrate Judge

13